UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSHUA GABRIELLE VILLANUEVA-ROSE, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 1:24-cv-02247-JRO-TAB |
| WARDEN, | ) ) | |
| Respondent. | ) ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Joshua Gabrielle Villanueva-Rose seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges prison disciplinary proceeding no. CIC 24-08-3118 in which he was found guilty of battery against staff and was sanctioned with the loss of 180 days earned credit time, a one-step credit class demotion, and the loss of 30 days of tablet privileges. Dkt. 1 at 1. For the reasons explained below, the disciplinary proceeding did not violate Mr. Villanueva-Rose's due process rights, and his habeas petition is **DENIED**.

**I.**

**FACTUAL BACKGROUND**

On August 16, 2024, Sgt. Cynthia Ivins wrote a conduct report charging Mr. Villanueva-Rose with battery against staff, in proceeding no. CIC 24-08-3118. Dkt. 24-1. The conduct report states:

> On 08/16/24 at approximately 4:16pm I, Sergeant Cynthia Ivins #39 was informed that I/I Villanueva-Rose, Joshua, #269690 had his window covered. I went to cell 1L-1DRH to get I.I Villanueva-

> Rose to uncover his window, which he refused, so I opened the food tray slot to remove the items from the window myself. As I was removing the items covering the window, I/I Villanueva-Rose moved the mattress, then threw an unknown liquid substance on me, striking the right side of my face, chest, and leg with a liquid substance.

*Id.* at 1. Pictures were taken of Sergeant Ivins after the incident. Dkt. 26.

Mr. Villanueva-Rose was notified of the charge and provided with a copy of the conduct report and screening report on September 4, 2024. Dkt. 24-1 at 1-2; dkt. 24-2. He pled not guilty to the charge. Dkt. 24-2. The screening officer advised Mr. Villanueva-Rose of his rights. *Id.* The screening officer recorded a not guilty plea, and the "Screening Report" indicates that as physical evidence, Mr. Villanueva-Rose requested "can it be tested?"—which this Court construes to refer to a request that the liquid substance thrown on Sgt. Ivins be tested. *Id.* This request was denied as irrelevant. *Id.* Mr. Villanueva-Rose did not request any witnesses, but he requested a lay advocate, and one was appointed. Dkt. 24-2; dkt. 24-3.

A hearing was held on September 6, 2024. Dkt. 24-4. Mr. Villanueva-Rose stated: "Not guilty, I didn't do any of that stuff. They made all of this up and they pushed my face against the wall." *Id.* at 1. Based on Mr. Villanueva-Rose's statement, the conduct report, and the photographs, the disciplinary hearing officer ("DHO") found Mr. Villanueva-Rose guilty of offense A-117, battery on staff. *Id.* The DHO specifically stated that "All evidence was considered. Throwing an unknown substance on SGT Ivins constitutes assault/battery and is clearly a violation of code 117." *Id.* Mr. Villanueva-Rose

2

received the following sanctions: a 180-day credit time deprivation and a one-step credit class demotion, in addition to a written reprimand and a 30-day loss of tablet, phone, and commissary privileges. *Id.* Mr. Villanueva-Rose did not sign the hearing report, and the report states, "Unable to Sign/TR." *Id.* at 2.

Mr. Villanueva-Rose's appeals were denied. This habeas action followed.

## II.

## DISCUSSION

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" logically supporting a finding of guilt "and demonstrating that the result is not arbitrary." *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Ellison,* 820 F.3d at 274; *see also Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974).

Mr. Villanueva-Rose raises nine grounds in his habeas petition. Dkt. 2 at 2–7. The Court consolidates and summarizes his challenges into seven grounds as follows: 1) he did not receive written notice of the charge; 2) he was denied

the ability to present requested evidence; 3) he did not receive an impartial decisionmaker; 4) he should not have received a tablet restriction; 5) his disciplinary conviction violated several Indiana Department of Correction ("IDOC") policies; 6) his Miranda rights were violated; and 7) there was insufficient evidence to support his disciplinary conviction.  For the following reasons, each argument fails on the merits.[1]

**1.    Notice of Charge**

Mr. Villanueva-Rose first argues that he was denied adequate notice of the charge because he did not receive a "postponement notice" that rescheduled his hearing from September 5, 2024, to September 6, 2024.  Dkt. 2 at 3.  Due process entitled him to advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff,* 418 U.S. at 564 (due process requires a minimum of 24 hours advance written notice of the charge).  "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge."  *Northern v. Hanks,* 326 F.3d 909, 910 (7th Cir. 2003); *see also Whitford v. Boglino,* 63 F.3d 527, 534 (7th Cir. 1995).

---

[1] The Court acknowledges the Respondent's contention that Mr. Villanueva-Rose failed to fully, completely, and properly exhaust his available administrative remedies. Although exhaustion "ordinarily" should be resolved before a claim's merits, the Supreme Court has never held that "the procedural-bar issue must invariably be resolved first." *Brown v. Watters,* 599 F.3d 602, 610 (7th Cir. 2010) (quoting *Lambrix v. Singletary,* 520 U.S. 518, 524–25 (1997)).  Here, addressing the merits provides a more efficient resolution.

There is no question that Mr. Villanueva-Rose received constitutionally adequate notice of his charge at least 24 hours in advance of his hearing. Mr. Villanueva-Rose does not dispute that he was provided with a copy of the conduct report and screening report on September 4, 2024, and was notified of the charges. He quibbles only with the fact that his notice omitted "the time and place" of the hearing. But this Court is not aware of any due process right to mere scheduling information. *See Hill,* 472 U.S. at 454; *Ellison,* 820 F.3d at 274; *Wolff,* 418 U.S. at 563–67. Mr. Villanueva-Rose argues he was not prepared for his hearing because he did not receive the "postponement notice." This is facially implausible. Mr. Villanueva-Rose has not explained how receiving an extra day of preparation affected his readiness. Dkt. 2 at 3. He received at least the minimal notice required by due process.

**2. Denial of Evidence**

Mr. Villanueva-Rose argues that he requested evidence that he did not receive before his disciplinary hearing. Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton,* 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates

5

a "reasonable probability" of a different result, *Toliver v. McCaughtry,* 539 F.3d 766, 780–81 (7th Cir. 2008).  "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have."  *Manley v. Butts,* 699 F. App'x 574, 576 (7th Cir. 2017).

As the petitioner, Mr. Villanueva-Rose faces the burden of establishing that the evidence denied him was material and exculpatory.  *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

*First,* Mr. Villanueva-Rose argues that his request to review surveillance footage was improperly denied.  He says he made an oral request for the footage but then admits that he refused to review a "Screening Report" which would have confirmed what evidence he requested.  Because, as he says, he "did not review the report [him]self," he was unable to double-check that this form included his request for surveillance footage. Dkt. 30 at 10.  In what appears to be an argument in the alternative, he then says that the Screening Report form that he refused to review was illegible because it was printed on carbon copy paper, stating, "it's impossible to ensure that the evidence I requested was actually requested."  In opposition, the Respondents argue that Mr. Villanueva-Rose simply never requested the surveillance footage.

Mr. Villanueva-Rose's account of the alleged request for the video confirms he had an opportunity to request and present evidence, which satisfies the

minimum requirements of due process.  The fact that he did not receive the evidence he now says he wanted arises not from Respondent's constitutional violation but from his failure to ask for it, or at least double-check that he had asked when given the opportunity.  He essentially concedes that only requests for evidence that are recorded on a Screening Report have the potential of being granted.  And even assuming that he made an oral request to view the video, he admits that he refused to confirm what evidence was on that Screening Report despite having the opportunity to review it.  Minimum due process requires only the *opportunity* to present evidence, *Wolff*, 418 U.S. at 566, 570–71, and Mr. Villanueva-Rose squandered his opportunity.

Mr. Villanueva-Rose's alternative argument (that any Screening Report was illegible) is speculative at best because, as he admits, he never looked at the Screening Report.  The Screening Report presented by Respondents is, in fact, legible and it reflects that no surveillance video was requested.  *See* dkt. 24-2. Further, even if only an illegible carbon copy of the Screening Report was presented to Mr. Villanueva-Rose, the legible version of that form, *see* dkt. 24-2, still shows that he successfully requested the liquid to be tested, and that request was noted and denied.  This corroborates the Respondent's version of the events—namely, that if Mr. Villanueva-Rose had requested evidence, it would have been noted.  It is unclear to the Court how Mr. Villanueva-Rose was

7

successfully able to request testing of the liquids but not request the surveillance video.

Based on Mr. Villanueva-Rose's admission of an opportunity to double-check the evidence he requested and the other deficiencies in his version of the events, the Court finds that the evidence presented by the parties shows that Mr. Villanueva-Rose never received the surveillance footage because he never requested it.  Accordingly, his due process rights were not violated.

*Second*, Mr. Villanueva-Rose also argues that he was not permitted to see the photographs of Sgt. Ivins.  Respondent counters that sharing the photographs implicated facility safety and security concerns.  This circuit has recognized that a prisoner is not entitled to view certain evidence if it would be unduly hazardous to institutional safety or correctional goals.  *Wolff,* 418 U.S. at 566; *Piggie,* 344 F.3d at 679 (observing that a prisoner is not entitled to view security tape where there are bona fide security concerns).  It is reasonable for IDOC officials to withhold photographs of staff persons' face and body.

Moreover, Mr. Villaneuva-Rose has not demonstrated that the photographs were exculpatory. Due process requires only the production of exculpatory evidence.  *Rasheed-Bey v. Duckworth,* 969 F.2d 357, 361–62 (7th Cir. 1992).  Here, the evidence shows that the photos supported his guilt. Dkt. 24-4 at 1.   Mr. Villanueva-Rose essentially admits this, saying "[t]hese photographs were vital to the charged allegations, therefore they were exculpatory." Dkt. 30 at 11.  This is a tacit admission that the photos confirmed

8

his guilt, which is the opposite of exculpatory evidence. Mr. Villanueva-Rose is not entitled to habeas relief on this claim.

### 3.    Impartial Decision Maker

Mr. Villanueva-Rose alleges that he was denied an impartial decision maker. Dkt. 2 at 4. A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Hearing officers are impermissibly biased when they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Villanueva-Rose does not allege that the hearing officer was substantially involved in the incident for which he was charged or the investigation that followed. Nor does the record reflect "the degree" of partiality or any evidence of any pre-determined outcome. *See Piggie*, 342 F.3d at 667.

Instead, Mr. Villanueva-Rose argues that the DHO used to be a subordinate of Sgt. Ivins before he became a DHO officer, and this predisposed him to believe Sgt. Ivins over Mr. Villanueva-Rose. Mr. Villanueva-Rose also

9

alleges that the DHO said that Sgt. Ivins "was like a mother to him." Dkt. 30 at 15. But mutual respect among prison employees is not unexpected. The mere fact that the DHO was a former subordinate of and expressed respect for the principal witness against Mr. Villanueva-Rose is not sufficient to overcome the presumption that the DHO reviewed the matter with honesty and integrity. *Piggie*, 342 F.3d at 666–67.

Mr. Villanueva-Rose also argues that the battery incident for which he was disciplined was only the latest in a series of false charges made by Sgt. Ivins against him. He says the DHO refused to consider this pattern of false reports by Sgt. Ivins and that this is further evidence of the DHO's partiality. But this is simply another way of saying Mr. Villanueva-Rose disagrees with the findings of the DHO. Mere disagreement is not evidence of partiality. Due process entitled Mr. Villanueva-Rose to an *impartial* hearing officer—not a hearing officer who agrees with his defense. Mr. Villanueva-Rose is not entitled to habeas relief on this claim.

### 4.   30-Day Loss of Tablet Privileges

Mr. Villanueva-Rose next objects to his sanction of a 30-day tablet restriction. Dkt. 2 at 2. However, because this sanction did not concern the fact or duration of his custody, it cannot be a basis for habeas relief. Prisoners have no liberty interest in any loss of technology privileges. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) ("T.V. time, visitation privileges, prison jobs, or any of the other privileges prisoners enjoy . . . do not constitute liberty or property

interests"); *Thomas v. Ramos*, 130 F.3d 754, 762 n. 8 (7th Cir. 1997) (no liberty interest in "commissary privileges"); *Moton v. Allen*, No. 1:25-CV-00005-JMS-TAB, 2025 WL 1413809, at *3 (S.D. Ind. May 15, 2025) (holding prisoner "cannot pursue a habeas challenge over the loss of his tablet privileges").

Mr. Villanueva-Rose argues that losing these tablet privileges effectively deprived him of a law library and interfered with his ability to litigate his other lawsuits or access prison policies. Dkt. 2 at 3, 5. But again, "a habeas corpus proceeding challenges the legality of the petitioner's custody." *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983) (citing 28 U.S.C. § 2241(c)(3)). Mr. Villanueva-Rose's complaints about his other lawsuits are outside the scope of available relief in this action.

Mr. Villanueva-Rose argues that without tablet privileges he could not access prison policies, which disadvantaged his hearing and appeal preparations. But this had nothing to do with his ability to prepare his defense because the tablet privileges were lost *after* the hearing. Further, Mr. Villanueva-Rose fails to explain precisely how any particular policy was relevant to his defense. "[P]rison disciplinary officials need not permit the presentation of irrelevant or repetitive evidence in order to afford prisoners due process in disciplinary proceedings." *Scruggs*, 485 F.3d at 939–40. Without showing the relevance of the policies he says he could not access, he cannot show a due process violation. Mr. Villanueva-Rose is not entitled to habeas relief on this claim.

11

**5.    Violation of IDOC Policy**

Mr. Villanueva-Rose argues that IDOC violated its own policies during the disciplinary proceedings, including the policy that he be given access to a lay advocate for his disciplinary hearing and not performing a mental health screening.  Dkt. 2 at 3-7.  But prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates."  *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995).  Any violation of prison policies, standing alone, do not allege "any potential constitutional defect" and "have no bearing on [a habeas petitioner's] right to due process." *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008). Therefore, habeas claims based on prison policy are not cognizable.  *Id.*; *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002); *Moton*, 2025 WL 1413809, at *3. Further, as to the policy requiring access to a lay advocate, the evidence shows that a lay advocate was appointed for him.  Dkts. 24-2, 24-3. Mr. Villanueva-Rose is not entitled to habeas relief on this claim.

**6.    *Miranda* Violations**

Mr. Villanueva-Rose also argues that his *Miranda* rights were violated because "outside criminal charges" were filed against him because of the incident for which he was disciplined, and he was not read his rights.  Dkt. 2 at 7.  However, the Seventh Circuit has rejected the applicability of *Miranda* warnings to prison disciplinary cases.  *Montgomery v. Anderson*, 262 F.3d 641, 646 (7th Cir. 2001).  Mr. Villanueva-Rose is not entitled to habeas relief on this claim.

12

**7.    "Some Evidence"**

Finally, Mr. Villanueva-Rose generally challenges the sufficiency of the evidence to discipline him throughout his Petition.  In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison,* 820 F.3d at  274.  "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill,* 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler,* 696 F.3d 660, 675 (7th Cir. 2012) ("The 'some evidence' standard . . . is satisfied if 'there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" (quoting *Hill,* 472 U.S. at 455–56)).  The "'some evidence' standard" is "a 'meager threshold.'"  *Jones,* 637 F.3d at 849 (quoting *Scruggs,* 485 F.3d at 939).  Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends.  *Id.*  This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding."  *Rhoiney,* 723 F. App'x at 348 (citing *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000)).

Here, there is "some evidence" in the record that supports Mr. Villanueva-Rose's disciplinary conviction.  This evidence includes the conduct report and the photographs showing a wet substance on the side of Sgt. Ivins.  *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999) (a conduct report "alone" can "provide[] 'some evidence' for the . . . decision").  This is "some evidence" that Mr.

13

Villanueva-Rose battered staff by throwing an unknown liquid substance on Sgt. Ivins. Mr. Villanueva-Rose asks the Court to accept his contrary statement and afford it more weight, but the Court cannot re-weigh the evidence.

## III.

## CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding. Accordingly, Mr. Villanueva-Rose's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must be **DENIED** and the action dismissed with prejudice.

Consistent with this Order, Mr. Villanueva-Rose's motion for ruling, dkt. 34, motion to issue expeditious judgment, dkt. 35, motion for a case status, dkt. 37, are all **DENIED** as moot.

Judgment consistent with this Order shall now issue in a separate entry.

**IT IS SO ORDERED.**

Date: 3/17/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

14

Distribution:

JOSHUA GABRIELLE VILLANUEVA-ROSE
269690
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov